Gwendolyn Smith, M.A., J.D.
138 Weeks Way
Sebastopol, California  95472
Tel. (707) 849.0303
uredoc@gmail.com

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Gwendolyn Smith<br>  on behalf of herself and her minor<br>  child Zeus Harrison Smith,<br><br>Plaintiffs,<br><br>v.<br><br>Richard T. Hansen, D.D.S., d/b/a<br>  Comprehensive Wellness Center<br>  Associated, a.k.a. Laser Dental<br>  Wellness Center,<br><br>Defendant.<br><br>Jury Trial Demanded | CASE NO.: SACV 10-01964JVS(JCX)<br><br>FIRST AMENDED COMPLAINT |

GENERAL ALLEGATIONS

COMES NOW Plaintiff Gwendolyn Smith and amends the complaint as follows:

1. Plaintiffs Gwendolyn Smith, M.A., J.D. and Zeus Harrison Smith, age 17, [hereinafter "Plaintiff"] are temporarily residing in Sebastopol, California, until the end of the academic year, at which point they will return to Oregon.

2. Defendant Richard T. Hansen, D.D.S. [hereinafter "Defendant"], a California resident, is and was at all times mentioned herein a dentist licensed to practice dentistry by the State of California, license #26070, with a principal place of business at 1031 Rosecrans Avenue, Suite 104, Fullerton, CA 92833, within the venue boundaries of this Court.

3. Plaintiff is informed that Defendant is and at all times herein mentioned was practicing holistic dentistry, doing business as Comprehensive Dental Center Associates, "a member of the Comprehensive Health Association."

1

4. The amount in controversy, exclusive of interest and costs, exceeds $75,000.

5. This Court has diversity jurisdiction under the provisions of 28 U.S.C. § 1332. Jurisdiction and venue are proper in this Court for this action.

6. This Court also has federal question jurisdiction under the provisions of 15 U.S.C. § 45(a)(1). Jurisdiction and venue are proper in this Court for this action.

## FACTUAL BACKGROUND

7. In or about mid-September, 2006, Plaintiff, living and working in Sedona while attending a final year of full-time law school at Arizona State University's Sandra Day O'Connor School of Law in Phoenix, Arizona, contacted Defendant's office for the purpose of obtaining a treatment plan for holistic full-mouth dental reconstruction, including laser root canals to save two front teeth and restoration of an edentulous, badly collapsed bite, which plan was to have enabled Plaintiff to lock in a low-interest law school loan for which Plaintiff had qualified.

8. Shortly thereafter, Defendant's office manager [DOM], known to Plaintiff at the time as Luwann, provided Plaintiff with an estimate of the cost of Plaintiff's dental reconstruction that Plaintiff had requested to secure the loan, unconditionally approved for issuance in the amount of the estimate, $60,000, upon written receipt of the treatment plan.

9. Because Plaintiff had extensively researched Defendant's dental methodology, determining that Defendant's holistic technologically-advanced technique was the most biocompatible with Plaintiiff's chemical sensitivities, Plaintiff waited almost four months to attend an appointment with Defendant during a period in which time was of the essence because the offer for student-loan-financed dental reconstruction would expire in approximately two months' time, toward the end of Plaintiff's final law school year.

10. Plaintiff, whose creditworthiness was at issue due in large part to a weakened constitution arising from a severe cranio-facial battery years earlier, precipitating the necessity for such reconstruction, and who would not otherwise qualify for such low-interest loan if not through the law school program together with a one-time co-signer, faced further physical

deterioration, health, familial and professional setbacks if unable to obtain such costly reconstructive dentistry.

11. Defendant's office gave Plaintiff multiple reassurances of the relative ease in which Defendant would be able to reconstruct Plaintiff's deteriorated condition, assurances on which Plaintiff reasonably relied.

12. On December 26, 2008, the day before Plaintiff's appointment with Defendant, Plaintiff incurred the time and expense of renting a vehicle comfortable for such long distance travel and drove twelve hours with a sleeping child in the car to reach Defendant's office.

13. Upon Plaintiff's arrival the following morning, DOM handed Plaintiff a paper to sign indicating Plaintiff's agreement to join and abide by bylaws of a "Comprehensive Health Association," purporting to "protect your constitutional rights as a patient," stating that membership in such organization was required of any prospective patient.

14. However, DOM, despite multiple earlier conversations with Plaintiff, had never once mentioned Plaintiff''s needing to join any sort of association or to execute any paperwork as a prerequisite to becoming a patient of Defendant's other than to fill out the health questionnaire Defendant faxed to Plaintiff that Plaintiff duly completed and returned before the appointment.

15. Plaintiff was therefore surprised to learn that membership in such association was mandatory if Plaintiff wished to be treated by Defendant, even though Plaintiff's appointment entailed no actual treatment per se other than visual diagnosis for the purpose of confirming the proposed treatment plan to secure the loan enabling Plaintiff to obtain such treatment.

16. When Plaintiff asked DOM to see a copy of the association bylaws in order to understand what Plaintiff would be agreeing to, DOM become very irritated and informed Plaintiff that as a rule no prospective patients ever asked to read said document.

17. However, eventually DOM produced a hard copy of said by-laws, which Plaintiff found to contain fourteen pages of legal verbiage pertaining to organization, election, officers

and voting, except for one paragraph buried on the second-to-last page constituting an exculpatory contract wherein a prospective "association member"/patient waived all rights to sue Defendant.

18. Plaintiff declined to sign such agreement without first speaking with Defendant, whereupon Defendant's office terminated Defendant's appointment to provide a treatment plan to secure Plaintiff's loan.

19. Before Plaintiff left the office, Plaintiff's co-signatory, a former patient of Defendant, called DOM to request that Defendant's office keep its promise to provide a treatment plan for and treat Plaintiff as agreed, to which request Defendant never responded.

20. After Plaintiff left the office, Plaintiff remained for several days in Southern California while Plaintiff's former Southern California attorney endeavored to intervene, by calling Defendant's office repeatedly in an attempt to have Defendant's office keep its promise to provide a treatment plan for and treat Plaintiff as agreed, calls Defendant never returned.

21. On or about March 12, 2008, Plaintiff wrote to Defendant in an attempt to settle this matter without litigation (Ex. A), to which letter Defendant never responded.

22. As a result of Defendant's failure to keep his office's agreement to provide Plaintiff with a treatment plan and to treat Plaintiff, Plaintiff lost said loan, the ability to obtain reconstructive work, several of Plaintiff's few remaining teeth that could have been saved; and suffered subsequent years of continued chronic pain, systemic infection, functional disability and low self-esteem that severely adversely impacted Plaintiff's health and welfare, ability to be professionally employed, and consequently the welfare of Plaintiff's family consisting of Zeus Harrison Smith, a minor child entirely dependent upon Plaintiff for care and concern.

23. As a result of Defendant's failure to keep his office's agreement to provide Plaintiff with a treatment plan and to treat Plaintiff, Plaintiff's child did not procure the benefit of his sole custodial parent's financial viability, a future for which Plaintiff had worked assiduously to ensure.

## FIRST CAUSE OF ACTION: BREACH OF CONTRACT

24. Plaintiff incorporates the foregoing allegations here as if fully set forth.

25. Plaintiff and Defendant's office entered into an agreement regarding provision of a treatment plan.

26. Defendant in *propria persona* and *respondeat superior* breached said agreement by unilaterally and without cause terminating it.

27. Defendant also breached the agreement by failing and/or refusing to discuss with Plaintiff a supplemental contract of adhesion, an unfair and deceptive commercial act and practice, and failing and/or refusing to seek good faith methods of resolution so as not to put Plaintiff's loan, Plaintiff's health and welfare and consequently the welfare of Plaintiff's family in jeopardy.

28. By reason of Defendant's breach of contract, Plaintiffs have been damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

29. Plaintiff incorporates the foregoing allegations here as if fully set forth.

30. The contractual agreement between Defendant and Plaintiff contained an implied covenant by each party to act in good faith and deal fairly with the other party.

31. By failing to provide Plaintiff with any advance notice that such demand would be required and subsequently mandating that Plaintiff sign a deceptively-presented exculpatory contract held contrary to public policy moments before meeting with Defendant, refusing to keep Plaintiff's appointment despite the extensive efforts Plaintiff had taken to select and attend Defendant's services, as well as refusing to mitigate damages by reviewing the matter with intermediaries who subsequently contacted him on Plaintiff's behalf, Defendant acted in bad faith, unfairly and deceptively toward Plaintiff.

32. By reason of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiffs have been damaged in an amount to be determined at trial.

### THIRD CAUSE OF ACTION: PROMISSORY ESTOPPEL

33. Plaintiff incorporates the foregoing allegations here as if fully set forth.

34. In the alternative to the breach of contract claim above, Plaintiff alleges that Defendant is liable under the theory of promissory estoppel.

35. In the limited time-window as Defendant had available to obtain such, by providing comprehensive treatment plan, Defendant promised to enable Plaintiff the funds to procure such treatment as Plaintiff had been unable to obtain for years following Plaintiff's victimization causing the necessity for such treatment.

36. It was reasonably foreseeable that Plaintiff would rely on that promise.

37. Plaintiff incurred loss and suffered detriment as a result of Plaintiff's reliance on Defendant's promise because, during a period when Plaintiff had a very limited window in which to act to secure the substantial loan and subsequent treatment, Plaintiff expended significant time and resources upon Defendant when such time and resources could have been expended upon a provider who would have actually followed through on such promise.

38. By reason of the above, Plaintiffs have been damaged in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION: FRAUD IN THE INDUCEMENT

39. Plaintiff incorporates the foregoing allegations here as if fully set forth.

40. By formulating a plan for Plaintiff's treatment months before Plaintiff's appointment, presenting the office as willing to perform the services Plaintiff had requested and faxing forms required of Plaintiff before such appointment but leaving out a mandatory so-called "membership agreement," DOM knowingly made false representations to Plaintiff regarding Defendant's willingness to provide a treatment plan on which Plaintiff reasonably relied.

41. Had Plaintiff been aware of Defendant's aforestated deceptive policy as well unjust conduct surrounding such policy instead of knowing only of Defendant's prior conduct inducing Plaintiff to contract with and rely on Defendant, Plaintiff never would have waited months to see Defendant, losing the tight window of time that Plaintiff had available to find another similar provider as well as to obtain the loan to compensate such provider.

42. By reason of the above, Plaintiffs have been damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION: FRAUDULENT MISREPRESENTATION

43. Plaintiff incorporates the foregoing allegations here as if fully set forth.

44. By presenting a "membership agreement" requiring "members" to abide by "by laws" of which Defendant's office was most reluctant to make available to prospective "members" to read before signing, by cleverly concealing an illegitimate doctor-patient exculpatory waiver within such "agreement," by failing and/or refusing to give Plaintiff adequate notice of a requirement to sign such agreement or else waive rights to an appointment for which Plaintiff had waited months, Defendant fraudulently misrepresented both the purpose and reason for such "membership agreement" as well as the terms of and accessibility to his services.

45. By reason of the above, Plaintiffs have been damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION: UNFAIR AND DECEPTIVE TRADE PRACTICES

46. Plaintiff incorporates the foregoing allegations here as if fully set forth.

47. Plaintiff is informed and believes that Defendant's intentionally deceptive conduct described above is part of an ongoing business practice perpetrated upon other patients and clients, many of whom likely will fail to realize the nature of the exculpatory contract buried within the "by-laws" of the "association" of which they are required to become "members."

48. As such, Defendant's actions constitute unfair and deceptive trade practices, prohibited by and in violation of 15 U.S.C. § 45(a)(1).

49. Defendant and Defendant's office, providers of medical devices and services, additionally breached implied warranties under state law, an unfair and deceptive trade practice prohibited by and in violation of 15 U.S.C. § 45(a)(1).

50. By reason of the above, Plaintiffs have been damaged in an amount to be determined at trial.

WHEREFORE, Plaintiff prays for judgment against Defendants, as follows:

1. For general and special damages in an amount according to proof at the time of trial;
2. For punitive damages according to proof at time of trial;
3. For statutory attorneys' fees;
4. For costs incurred herein and pre-judgment interest, according to law;
5. For such other and further relief as the Court deems just and proper.

DATED: January 2, 2012          Respectfully submitted:

By: _____
Gwendolyn Smith, M.A., J.D.

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on January 12, 2012, I served a true and correct copy of the foregoing first amended complaint in a first class postage paid envelope addressed to the person hereinafter listed, by depositing said envelope in the U.S. mail.

Richard T. Hansen
1031 Rosecrans Ave. Ste. 104
Fullerton, CA 92833

Dated: January 12, 2012

_____
Gwendolyn Smith, M.A., J.D

